[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-14219

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 14, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 04-00403 CV-J-32-MMH

GENEBA GLOVER,
JAMES GILLINS,
individually as private attorneys general,
or alternatively on behalf of a class of all
others similarly situated,

                                        Plaintiffs-Appellants,

        versus

LIGGETT GROUP, INC.,
PHILIP MORRIS USA,

                                        Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 14, 2006)**

Before EDMONDSON, Chief Judge, BIRCH and ALARCÓN,[*] Circuit Judges.

_____

[*]Honorable Arthur L. Alarcon, United States Circuit Judge for the Ninth Circuit, sitting by
designation.

PER CURIAM:

Plaintiffs Geneba Glover and James Gillins filed suit against cigarette manufacturers Philip Morris USA and Liggett Group under 42 U.S.C. section 1395y(b)(3)(A) of the Medicare Secondary Payer statute ("MSP"). Plaintiffs sought to recover for the Medicare program the cost of certain health care services -- "attributable to cigarette smoking" -- that were rendered in Florida and allegedly caused by Defendants' tortious conduct. The district court dismissed Plaintiffs' complaint for failure to state a claim under Fed.R.Civ.Pro. 12(b)(6), concluding that section 1395y(b)(3)(A) creates no cause of action against an alleged tortfeasor whose responsibility to pay medical costs has not yet been established. We affirm.

## I. Background

The Medicare Secondary Payer statute ("MSP"), which was enacted in 1980 to reduce federal health care costs, "makes Medicare the secondary payer for medical services provided to Medicare beneficiaries whenever payment is available from another primary payer." Cochran v. U.S. Health Care Financing Admin., 291 F.3d 775, 777 (11th Cir. 2002). "This means that if payment for covered services has been or is reasonably expected to be made by someone else,

2

Medicare does not have to pay. In order to accommodate its beneficiaries, however, Medicare does make conditional payments for covered services, even when another source may be obligated to pay, if that other source is not expected to pay promptly." Id.; see 42 U.S.C. § 1395y(b)(2)(A)(i). Such payment is conditioned on Medicare's right to reimbursement if a primary plan later pays or is found to be responsible for payment of the item or service. Id.

Over time, Congress has expanded the definition of "primary plan" to include a "group health plan, . . . workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance . . . ." § 1395y(b)(2)(A) (emphasis added). In December 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), which added the following sentence to the MSP's definition of a primary plan: "[a]n entity that engages in a business, trade, or profession shall be deemed to have a self-insured plan if it carries its own risk (whether by a failure to obtain insurance, or otherwise) in whole or in part." § 1395y(b)(2)(A). Congress intended the MMA to apply retroactively. For

purposes of this appeal, Defendants do not dispute that they qualify as "primary plans" by carrying part of their own risk.[1]

To facilitate recovery of conditional payments, the MSP provides for a government action against any entity that was responsible for payment under a primary plan, 42 U.S.C. § 1395y(b)(2)(B)(iii), and subrogates the United States to the rights of a Medicare beneficiary to collect payment under a primary plan for items already paid by Medicare, § 1395y(b)(2)(B)(iv). The MSP also creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights. See § 1395y(b)(3)(A).

In May 2004, Plaintiffs filed suit against cigarette manufacturers Philip Morris USA and Liggett Group under section 1395y(b)(3)(A) -- the MSP private cause of action -- "seeking to recover for the Medicare program all the expenditures it made from May 26, 1998 to the present for health care services rendered in the State of Florida to Medicare's beneficiaries for the treatment of diseases attributable to cigarette smoking." Plaintiffs allege that these health care expenditures were caused by a battery committed by Defendants, who exposed

---

[1]Defendants reserve the right to challenge in future proceedings the legality of retroactively applying the MMA.

smokers to the addictive properties of nicotine without the smokers' consent.[2]

Plaintiffs, first, seek to use the MSP private cause of action to establish

Defendants' state law tort liability for battery and, then, to recover reimbursement

for payments made by Medicare on account of this tortious conduct.

Defendants moved to dismiss the complaint. Defendant argued these three

things: that Plaintiffs' claims (1) were barred by collateral estoppel, (2) were

duplicative of claims brought by the United States in a different forum, and (3)

failed to state a claim for which relief could be granted because the MSP provides

no private cause of action against an alleged tortfeasor whose responsibility for

payment of a Medicare beneficiary's medical costs has not been previously

established, by agreement or otherwise.

The district court concluded that Plaintiffs' claims were not barred by

collateral estoppel because the MMA amendments enacted in December 2003 had

caused an intervening change in legal principles.[3] The district court also

concluded that Plaintiffs' claims were not impermissibly duplicative of MSP

---

[2]Plaintiffs allege that (1) most smoking-related disease is caused by the prolonged use of cigarettes, which in turn is caused by addiction; (2) Defendants knew that nicotine in cigarettes is addictive while their customers did not; and (3) Defendants intentionally concealed the addictive nature of cigarettes and manipulated nicotine levels to hook customers.

[3]Defendants did not appeal the district court's collateral estoppel decision, but argue that the collateral estoppel defense was wrongly rejected and is a potential alternative basis to affirm the district court's dismissal of Plaintiffs' MSP claims. We do not reach the issue.

claims in another forum. The district court, however, agreed with Defendants that section 1395y(b)(3)(A) supports no private cause of action against an alleged tortfeasor where the defendants' responsibility to pay for health care expenses of a Medicare beneficiary has not been already established. The district court dismissed Plaintiffs' MSP claims under Fed.R.Civ.Pro. 12(b)(6). Plaintiffs appeal the dismissal of their MSP claims, arguing that nothing in section 1395y(b)(3)(A) indicates a plaintiff must establish an alleged tortfeasor's responsibility to pay health care costs before an MSP claim can be brought, rather than during the course of the MSP proceedings.

## II. Standard of Review

We review de novo the district court's grant of a motion to dismiss under Fed.R.Civ.Pro. 12(b)(6) for failure to state a claim, accepting the factual allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003). Dismissal is appropriate where it is clear the plaintiff can prove no set of facts in support of the claims in the complaint. Marshall County Bd. of Educ. v. Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993). Dismissal is therefore permitted

6

"when on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Id.

## III. Discussion

The MSP creates "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which <u>fails</u> to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3) (emphasis added). About a primary plan's duty to reimburse Medicare, the MSP says the following things:

> "A primary plan, and an entity that receives payment from a primary plan, shall reimburse the appropriate Trust Fund for any payment made by the Secretary under this subchapter with respect to an item or service <u>if it is demonstrated that such primary plan has or had a responsibility to make payment</u> with respect to such item or service.

42 U.S.C.A. § 1395y(2)(B)(ii) (emphasis added).

In 2003, the MMA amended the MSP by adding a sentence that specifies the means available for demonstrating a primary plan's responsibility to pay:

> "A primary plan's <u>responsibility for such payment may be demonstrated by</u> a judgment, a payment conditioned upon the recipient's compromise, waiver,

7

> or release (whether or not there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by <u>other means</u>."

<u>Id</u>. (emphasis added). The Defendants have never been adjudged liable for the battery Plaintiffs allege in the complaint and have never made a payment conditioned upon "compromise, waiver, or release" of claims for the health care expenses allegedly caused by this tort. In addition, Defendants' responsibility to pay for these expenses has not previously been demonstrated by "other means." Plaintiffs argue, however, that Defendants' responsibility to pay a Medicare beneficiary's health care expenses can be demonstrated by litigating a state tort claim <u>during</u> the MSP private cause of action for failure to reimburse Medicare. We disagree.

We begin our analysis by closely examining the text of section 1395y(b)(3), which creates a private cause of action for double damages "in the case of a primary plan which <u>fails</u> to provide for primary payment (or appropriate reimbursement) in accordance with . . . (2)(A)." Paragraph (2)(A) prohibits Medicare from paying for items or services for which payment can reasonably be expected to be made under a primary plan "except as provided in subparagraph (B)." Subparagraph (B) authorizes Medicare to make conditional payments, but

8

requires that "[a] primary plan, and any entity that receives payment from a primary plan, <u>shall reimburse</u> [Medicare] with respect to an item or service <u>if it is demonstrated</u> that such primary plan <u>has or had a responsibility</u> to make payment with respect to such item or service." 42 U.S.C. § 1395y(b)(2)(A) & (b)(2)(B)(ii) (emphasis added).

When Plaintiffs filed their MSP claim, Defendants' responsibility to pay for items or services had not yet been "demonstrated," which is a condition precedent to Defendants' obligation to reimburse Medicare under section 1395y(b)(2)(B)(ii). Until Defendants' responsibility to pay for a Medicare beneficiary's expenses has been demonstrated (for example, by a judgment), Defendants' obligation to reimburse Medicare does not exist under the relevant provisions. Therefore, it cannot be said that Defendants have "failed" to provide appropriate reimbursement. Based on this language, we conclude that an alleged tortfeasor's responsibility for payment of a Medicare beneficiary's medical costs must be demonstrated <u>before</u> an MSP private cause of action for failure to reimburse Medicare can correctly be brought under section 1395y(b)(3)(A).

Our conclusion that section 1395y(b)(3) does not create a private cause of action against alleged -- as opposed to proved -- tortfeasors whose responsibility for payment of medical costs has not been previously established is supported by

9

three additional considerations. First, Plaintiffs' proposed interpretation of section 1395y(b)(3)(A) would drastically expand federal court jurisdiction by creating a federal forum to litigate any state tort claim in which a business entity allegedly injured a Medicare beneficiary, without regard to diversity of citizenship or amount in controversy. Second, under Plaintiffs' interpretation, an alleged tortfeasor that is sued under the MSP (instead of under state tort law) could not contest liability without risking the penalty of double damages: defendants would have no opportunity to reimburse Medicare <u>after</u> responsibility was established but before the penalty attached. Third, Plaintiffs' proposed interpretation would allow individuals acting as private attorney generals to litigate the state tort liability of a defendant towards thousands of Medicare beneficiaries -- as a predicate to showing MSP liability -- without complying with class action requirements. We are confident that, if Congress intended such radical innovations in jurisdiction, federal-state relations, and tort liability, it would have more clearly expressed its intent.

Plaintiffs unpersuasively argue that requiring tort liability to be established by a separate adjudication or agreement effectively leaves no role for the MSP private right of action because:

there would never be a circumstance in which a primary plan failed to make a primary payment (for it would have been compelled to do so in the initial tort suit). . . . The only conceivable use of these MSP recovery actions, then, could arise if a defendant refused to pay a state court judgment, and state judicial process is for some reason unable to enforce its own courts' judgments.

We disagree. For example, Plaintiffs' argument ignores the MSP's role in obtaining reimbursement for Medicare, which makes conditional payments on behalf of beneficiaries when no primary payer is expected to pay promptly (that is, within 120 days of the earlier of the medical service being furnished or a claim being filed with the liability insurer) -- which would generally be the case when tort liability is litigated. See 42 C.F.R. § 411.21. After the Medicare beneficiary obtains a favorable judgment or settlement of state tort claims, Medicare is entitled to reimbursement to the extent of its conditional payments. The MSP authorizes a private cause of action against a primary plan that pays a judgment or settlement to a Medicare beneficiary, but fails to pay Medicare its share. See United States v. Baxter Intern., Inc., 345 F.3d 866, 879 (11th Cir. 2003) ("Under [42 C.F.R. §] 411.24(i), a 'third party payer' may be required to reimburse Medicare if it paid a provider or a claimant when it knew, or should have known, that Medicare had made a conditional primary payment.").

11

## IV. Conclusion

The district court's dismissal of Plaintiffs' MSP claims for failure to state a claim is AFFIRMED.